<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*Plaintiff,*<br><br>v.<br><br>**$59,304.48 IN UNITED STATES CURRENCY,**<br><br>*Defendant in rem.* | **Civil Action No. 22-2275**<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff United States of America's (the "Government") Motion for the Entry of Default Judgment and Final Order of Forfeiture of a total of $59,304.48 in United States currency (the "Defendant Property") pursuant to Federal Rule of Civil Procedure 55(b), ECF No. 6.  For the reasons set forth herein, the Government's Motion is **GRANTED.**

## I.        BACKGROUND

This civil <u>in rem</u> asset forfeiture action arises from the Government's investigation into a business e-mail compromise scheme targeting new homeowners.  <u>See</u> Compl., ECF No. 1.  In October 2021, two individuals (the "Victims") were preparing to close on a new home when they received an email from the email address: closingattorneyoffice@gmail.com, which instructed them that a down payment on their new home was due before the closing date (the "October e-mail").  <u>Id.</u> ¶¶ 7-9.  The October e-mail directed the victims to wire funds for the fraudulent "down payment" to a Citibank N.A. ("Citibank") account (the "Citibank Account").  <u>Id.</u> ¶ 9.  Upon receipt

of the October e-mail, the Victims, believing the e-mail came from their title company, immediately authorized the transmittal of a total of $119,910.00 to the Citibank Account. Id. ¶¶ 9-10.  A few days later, when the title company notified the Victims that their down payment had not been received, law enforcement was notified.  Id. ¶ 11.  Law enforcement's subsequent investigation revealed that the October e-mail was not associated with the Victims' title company and that the Victims were the targets of a fraud scheme whereby an individual or individuals impersonated a title company and defrauded those looking to close on a new home.  Id. ¶ 12.

According to records provided by Citibank, the signatory for the account listed in the October e-mail was Diane Iacobino ("Iacobino").  Compl. ¶¶ 13-14.  On October 29, 2021, law enforcement interviewed Iacobino, who stated that she had been in contact with a man known to her as Rick Bennell ("Bennell").  Id. ¶ 15-16.  Iacobino told law enforcement that Bennell said he would be sending money to her Citibank account and would tell her what to do with the funds once they were received.  Id. ¶ 16.  Sometime during the week of October 25, 2021, when Iacobino went to withdraw money from an automated teller machine ("ATM"), she noticed her account had a balance of over $100,000.00, when prior to receiving the wire transfers from the Victims, the account only had a balance of $18.09.  Id. ¶¶ 16, 21.

After she noticed the money in her account, Iacobino contacted Bennell who instructed her to: (1) wire $58,273.51 to an account at Gemini Trust Co. (the "Gemini Account"), and (2) withdraw $58,137.76 in the form of a cashier's check and mail it to an individual named Anthony Ferrisi ("Ferrisi") in Greenlawn, New York.  Id. ¶ 17.  Iacobino then went to her local Citibank branch and followed Bennell's instructions by: (1) wiring $58,273.51 to the Gemini Account, and (2) obtaining a cashier's check in the amount of $58,137.76 and mailing it to Ferrisi.  Id. ¶ 18.[1]

---

[1] Records obtained from Citibank confirm Iacobino's version of events as told to law enforcement in her October interview.  Compl. ¶ 13.

After these and other miscellaneous transactions[2] were withdrawn from the account, a balance of $1,030.97 remained in the Citibank Account.  Compl.  ¶ 22.

Gemini Trust's records also show that Iacobino was the signatory for the Gemini Account and that on October 28, 2021, $58,273.51 was transferred from the Citibank Account to the Gemini Account.  Id. ¶¶ 22-23.  On February 3, 2022, United States Magistrate Judge Leda Dunn Wettre issued a warrant (the "Seizure Warrant") for the amounts remaining in the Citibank and Gemini Accounts.  Compl. ¶ 24.  The total amount seized from the two accounts was $59,304.48.  Id. ¶ 25.  The currency from the two accounts was then held by the United States Secret Service ("USSS") as cashier's checks in the evidence vault at the USSS Newark Field Office.  Id. ¶ 6.

On April 19, 2022, the Government brought this in rem civil forfeiture proceeding (the "Forfeiture Proceeding") against $1,030.97 previously held at Citibank, and $58,273.51 previously held at Gemini Trust, by filing a Verified Complaint for the Forfeiture in rem of the Defendant Property.  ECF No. 1.  On May 4, 2022, a Warrant for Arrest in rem issued for the Defendant Property (the "Arrest Warrant.").  ECF No. 2.  Once the Arrest Warrant was issued, Defendants in rem were transferred to the USSS Asset Forfeiture Branch in Washington, D.C. and deposited into the Treasury Enforcement Office of Asset Forfeiture Suspense Account.  Compl. ¶ 6.

On July 12, 2022, the Government filed a Notice of Complaint for Forfeiture in rem with this Court (the "Notice of Complaint") which identified the Defendant Property and stated that any person who asserts an interest in the Defendant Property must file a verified claim with the Clerk of the Court conforming to the requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules").  ECF No. 3.  The

---

[2] Citibank's records indicate that $2,383.75 was withdrawn as cash through four ATM transactions. $102.10 was withdrawn from the Citibank Account for fees related to the wire transfer, the cashier's check purchase, and a single debit transaction.  Compl. ¶ 22.

Notice of Complaint also indicated that failure to follow the requirements set forth therein could result in default judgment, forfeiture, or other relief demanded in the Verified Complaint.  Id.

The Government sent copies of the Verified Complaint and the Notice of Complaint to Iacobino, the only party known to the Government who could have claimed an interest in the Defendant Property.  Minish Decl., ¶ 4, Ex. A, ECF No. 6.1.  It also posted notice of the instant forfeiture action on its official website, http://www.forfeiture.gov, to alert potential claimants to the Defendant Property for thirty consecutive days after filing its Verified Complaint.  See ECF No. 4, Declaration of Publication.  No claims or answers were filed in this action, no parties have appeared to contest the action date, and the time to do so has expired.  Minish Decl. ¶ 6, see also Supplemental Rules G(4)(b)(ii) and G(5)(a) and 18 U.S.C. § 983(a)(4).  On September 19, 2022, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the United States filed a Request of Entry of a Default by the Clerk of the Court, which the Clerk entered on September 22, 2022.  ECF No. 5.  The instant Motion for Default Judgment followed.  ECF No. 6.

## II.   LEGAL STANDARD

### A.   Entry of Default Under Federal Rule of Civil Procedure 55

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter "default judgment against a properly served defendant who fails to file a timely responsive pleading."  Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008).  While entering default judgment is within the Court's discretion, "entry of default judgment is disfavored as decisions on the merits are preferred."  Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008) (internal quotation marks and citations omitted).  In deciding whether entry of default is warranted, the Court treats "the factual allegations in [the] complaint, other than those as to damages . . . as conceded by [the] defendant," DIRECTV, Inc. v. Pepe, 431

F.3d 162, 165 (3d Cir. 2005), and must decide whether such allegations "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Chanel, 558 F. Supp. 2d at 535.

Several prerequisites must be met before the default judgment is appropriate. First, the Court must determine whether it has jurisdiction over the action and the parties, Animal Sci. Prods., Inc., 596 F. Supp. 2d at 848, and whether the moving party properly served the defendant with notice of default. See E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014). Next, the Court must assess whether the moving party has stated a sufficient cause of action and has proven damages. Chanel, 558 F. Supp. 2d at 536, 538. Finally, after finding that those prerequisites are met, the Court must consider three additional factors: (1) whether the party subject to default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Walker v. Pennsylvania, 580 F. App'x 75, 78 (3d Cir. 2014).

## B. Procedural Requirements for Civil Asset Forfeiture Actions

Pursuant to 18 U.S.C. § 981, "property, real or personal, is subject to forfeiture to the United States" where such property "constitutes or is derived from proceeds traceable to a violation of [certain enumerated offenses] or any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. § 1956(c)(7)]) [3] . . . or a conspiracy to commit such offense." 18 U.S.C. § 981; see United States v. Wynns, No. 2:20-cr-276, 2022 WL 683029, at *2 (D.N.J. Mar. 8, 2022) ("[P]roperty that constitutes or is derived from the proceeds of wire fraud or conspiracy to commit wire fraud is therefore subject to forfeiture.").

---

[3] "Specified unlawful activity" as defined under 18 U.S.C. § 1956(c)(7) includes wire fraud.

In addition to Rule 55's requirements, in rem forfeiture cases brought under Section 981, as here, are governed by the procedural requirements set forth in Rule G of the Supplemental Rules and 18 U.S.C. § 983.   Under the Supplemental Rules, the Government must file a verified complaint stating the grounds for subject matter jurisdiction, in rem jurisdiction over the relevant property, and venue.  See Supp. R. G(2).  The verified complaint must also describe the relevant property with reasonable particularity, state the property's location when any seizure occurred and its location when the action is filed, identify the statute under which the forfeiture action is brought, and provide sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial.  Id.

Pursuant to Supplemental Rule G(3)(b) and (c), the Clerk of the Court "must issue a warrant to arrest the property if it is in the Government's possession, custody, or control" before the government may seize it.  The Government must also publish notice of the forfeiture action for any potential claimants of which it is not aware, see Supp. R. G(4)(b), and provide direct notice to any potential known claimants.  Supp. R. G(4)(a).  With respect to unknown potential claimants, the Government must publish its notice on an official government forfeiture website or publicly elsewhere within a reasonable time after it files its verified complaint, and such notice must remain published for at least thirty consecutive days.  See Supp. R. G(4)(a)(iv)(C).  For potential claimants known to the Government, the Government must send direct notice of the action and a copy of the verified complaint "by means reasonably calculated to reach the potential claimant," including to the potential claimant individually and the claimant's attorney.   Id. § (4)(b)(i), (4)(b)(iii).

Claimants seeking to avoid forfeiture must file a claim with the Clerk of the Court that conforms with Supplemental Rule G(5)(a) and 18 U.S.C. § 983(a)(4)(A).  Under Supplemental Rule G(5)(a), the claimant must file a signed claim in the court where the action is pending that

identifies the specific property claimed, as well as the claimant and the claimant's interest in the property, and serve the claim on the Government's attorney.  Section 983(a)(4)(A) requires the claimant to file their claim no later than thirty days after the date of service of the Government's verified complaint or after the date of final publication of notice of the verified complaint's filing. 18 U.S.C. § 983(a)(4)(A).

## III.   ANALYSIS

Having reviewed the Verified Complaint, Legal Notice, Arrest Warrant, and the Government's Declaration and its attachments, the Court is satisfied that entry of default judgment against the Defendant Property is warranted.

### A.   Rule G's and Section 983's Requirements

The Government has met Rule G's and Section 983's procedural requirements for civil asset forfeiture actions.  On April 19, 2022, the Government filed a Verified Complaint which asserts the Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a) and in rem jurisdiction over the Defendant Property under 28 U.S.C. 1355(b)(1)(A).  Compl. ¶¶ 4-5.  The Government also filed a warrant for the arrest of the Defendant Property.  ECF No. 2.  Both the Verified Complaint and the Arrest Warrant describe the Defendant Property with particularity, namely $59,304.48 in United States currency, and state the location at which it was seized.  Id. ¶¶ 1, 6; Arrest Warrant at 1.

The Government also adequately identifies the statutory basis for this action.  The Verified Complaint alleges facts sufficient to support a reasonable belief that the Government would be able to meet its burden of proving the Defendant Property constitutes money that "is derived from proceeds traceable to a violation of [wire fraud]," 18 U.S.C. §§ 981(a)(1)(C), at trial.  First, the Citibank Account that received the wire transfer from the Victims matched the account number

listed in the October e-mail.  See Compl. ¶¶ 1, 14, 19.  The Citibank records further show that: (1) on October 28, 2021, a wire transfer of $58,273.51 was made from the Citibank Account to the Gemini Account, and (2) on October 27, 2022, $58,137.76 was withdrawn from the Citibank Account in the form of a cashier's check.  Id. ¶ 20.  These events were subsequently corroborated by Iacobino's interview with law enforcement.  See id. ¶¶ 15-24.  Therefore, these facts, accepted as true for the purposes of this Motion, are sufficient to establish a connection between the currency and the wire fraud.

Finally, the Government followed the proper procedures after filing the Verified Complaint to provide notice to potential claimants.  The Government provided direct notice to Iacobino by mailing her a copy of the Verified Complaint and the Notice of Complaint.  Minish Decl. ¶ 4, Ex. A.  The Government also published notice of the forfeiture action on its official government website for at least thirty consecutive days through August 11, 2022.  See Decl. of Publication. The Notice of Complaint stated that any person who wished to assert an interest in the Defendant Property must file a verified claim that conforms to Rule G's requirements and explained those requirements.  ECF No. 3.  No potential claimants filed verified claims for the Defendant Property within thirty days after the date of the Government's published notice of its filing of the Verified Complaint.

Based on the foregoing, the Court is satisfied that the Government has met Rule G's requirements, and the period for filing a verified claim has expired.  See 18 U.S.C. § 983(a)(4)(A).

**B.  Rule 55's Requirements**

The Court also finds that the Government has met Rule 55's requirements for default judgment because no potential claimant filed a claim for the Defendant Property within the time set forth in the Government's notice a default judgment is appropriate.  See United States v.

8

Assorted Various Jewelry Valued at $13,430.00, No. 11-777, 2013 WL 775542, at *2 (D.N.J. Feb. 28, 2013) ("In the absence of a verified claim or a valid answer to the Government's Complaint, the Government is entitled to default judgment pursuant to Fed. R. Civ. P. 55(a).").

In addition, the Walker factors further support entry of default here.  First, if the Court declines to enter default, the Government will be prejudiced as "it has no other remedy against the Defendant currency."  United States v. $16,010.00 in United States Currency, No. 11-945, 2011 WL 2796338, at *6 (D.N.J. July 13, 2011).  Second, the Court cannot consider any defenses by potential owners of the Defendant Property, like Iacobino, because they neither filed a claim within the statutorily mandated timeframe for doing so, nor answered the Government's Verified Complaint.  See United States v. $25,000 in United States Currency, No. 18-14248, 2019 WL 950180, at *5 (D.N.J. Feb. 27, 2019) ("[I]t is axiomatic that the Court cannot consider any defenses because no claims have been filed asserting a defense.").  Third, such a failure to respond, especially with respect to Iacobino, appears to be the result of culpable conduct.  Iacobino did not file a claim for the Defendant Property, nor did she file a verified claim in response to the Government's Verified Complaint and Notice of Complaint when the record shows that Iacobino received direct notice of this action.  Minish Decl., Ex. A.

Because the Government provided proper notice to Iacobino and unknown potential claimants, those claimants "bear the responsibility for their failure to file a verified claim."  United States v. $72,378.00 in United States Currency, No. 15-8425, 2017 WL 6508356, at *5 (D.N.J. Dec. 20, 2017).  They did not.  The Government has thus satisfied the procedural requirements governing default judgment here.

**III.    CONCLUSION**

For the reasons set forth herein, the Government's Motion for the Entry of Default Judgment and Final Order of Forfeiture of a total of **$59,304.48** in United States currency is hereby **GRANTED**.  No right, title, or interest in the Defendant Property shall exist in any other party. An appropriate Order follows.

Dated:  April 11, 2023

*/s Madeline Cox Arleo*

**Hon. Madeline Cox Arleo**

**UNITED STATES DISTRICT JUDGE**